UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA

FILED
2009 AUG 14 11:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

DEMETRIUS HILL, PRO SE, et.al.
         Plaintiff,

      -against-

Harley Lappin, B.O.P. Director,
Constance Reese, Warden FCI Talladega
William Elston, unitmanager at Talladega (SMU)
Lt. Bowns, Talladega SMU-lieutenant,
Wardens at U.S.P.'s
Regional Director Ray Hope
Regional Directors over SMU USP SHU.
         Defendants.

COMPLAINT
JURY TRIAL
DEMANDED

CV-09-S-1637-E

---

1. Defendants are all employed as BoP employees, defendant Lappin is the director of the B.O.P..

2. Defendants are sued in their <u>official capacity</u>, except defendants Elston (unit Manager) and Lt. Bown (SMU) who are <u>also</u> sued in their individual capacitys.

3. The jurisdiction of this court is invoked pursuant to <u>Bivens v. Six unknown federal Narcotics Agents</u> 403 U.S. 388 (1971); 28 U.S.C. 1331.

## CLAIM ONE

Plaintiff has been confined to the BoP since 2002, Harley Lappin has a nationwide policy of forcing (2) two prisoners into a cell to be housed in S.H.U. and S.M.U.. Coersed, and forced double celling is being done, in U.S.P. Special Housing units (SHU) and now in the Special Management units (SMU) nationally. This forced and coersed double celling in these above stated units are un-safe, and have resulted in numerous & repeated deaths of prisoners, assaults with and without weapons, and the rampant & rapid spread of disease due to excessive sexual assaults. There is no constant supervision inside these units cells, and "high Maximum" custody prisoners serving lenghthy sentences are unsupervised inside these cells for long periods of time, creating a constant threat of violence, and repeated acts of all forms of violence.

## CLAIM TWO

Harley Lappin is deliberatly indifferent to the safty of prisoners inside S.M.U. and (U.S.P.) S.H.U.. Inside these cells one "high max" prisoner must be <u>uncuffed</u> prior to the other prisoner, and this has lead to prisoners being assaulted while still in hand cuffs, repeatedly this occurs, to the point that Harley Lappin is aware of these assaults/attacks or should be yet still allows prisoners to be forced into these cells. Harley Lappin operates numerous prisons that have S.M.U. programs, with prisoners that have extensively long violent disciplanary histories, yet he has allowed and instructed Regional Directors to double cell these prisoners without constant or adequate supervision. The regional directors have directed and allowed the aforementioned type prisoners to be forcibly double celled, with prisoners who may be sexual predators who have H.I.V. or full blown AIDS, and this is aiding the spread of deadly

diseases nationwide in the B.O.P.. The Regional Directors and wardens where S.M.U.$^s$ and (U.S.P.) S.H.U.$^s$ are operated are knowingly and intentionally disregarding a risk that is excessive and poses a substantial risk of serious harm to prisoners nationwide confined in the (BoP) SMU and S.H.U., in violation of the eighth amendment.

## CLAIM THREE

Harley Lappin, his Regional Directors, and wardens where (U.S.P.) S.H.U. and S.M.U. are operated are showing intentional recless disregard to prisoner safety by failing to act reasonably by housing excessively violent, and "HighMax" prisoners in double bunk cells where assaults, sexual and otherwise is rampant.

## CLAIM FOUR

Harley Lappin, his Regional Directors and wardens in (U.S.P.) S.H.U. and S.M.U. are deliberatly indifferent to prisoner safety —

and show constant reckless disregard to prisoner safty by failing to act reasonably in the double celling of "highmax" prisoners by:

(a) double celling "Mentally ill" prisoners who have propensitys for violence, with violent disciplanary historys;

(b) double celling "enemy gang" members who have nationwide Gang wars and cant function in general population with one another;

(c) double celling prisoner with extensive disciplanary histories, in cells where one prisoner has to be uncuffed before the other, and prisoners are viciously & sadistically assaulted while still in hand cuffs. And staff refuse to open the cell door to stop the assault because one prisoner is already uncuffed and is "highmax" and may have a weapon.

(d) double celling prisoners in S.M.U. or S.H.U.(USP) where there is no duress buttons, and cells isolated where staff can not hear calls for help. And where staff are unresponsive to duress buttons — and this has caused many deaths do to brutal assaults and or Medical emergencies;

(e) double celling prisoners without a constant trained Medical person inside the units for Medical emergency's or assaults that need immediate Medical attention;

(7) Forcing prisoners to double cell by placing them in ambutory restraints for hours or days or four-pointing them to beds. And authorizing a "use of force Team" to run in cells to coerse double celling; and placing refusing prisoners on "Sack Meals" eg. Bologna an cheese 3 times a day for 7 days at a time without a incident report

or a finding of guilt on any incident report; sack meal is used as corpral punishment & a behaviorial modification tactic to force compliance, regardless that such a meal is detrimental to ones health;

(g) Forcing double celling for 18 to 24 months inside a SMU where prisoners are kept locked in their cells 23 hours a day Mon-Fri. and 24 hours a day on weekends;

(h) Forcing double celling in cells where one can not use the bathroom without the other prisoner watching - and this is when many sexual assaults occur or when the prisoner is in the cell-shower;

(i) Forcing double celling in cells where if one person goes to recreation and the other stays back and is free to rummage through the other prisoners legal materials or personal letters obtaining home addresses - yet in most

cases a prisoner will refuse to let the other prisoner back into the cell (by refusing to cuff up) and keep All his (the other prisoners) personal belongings and legal materials - property is constantly stolen in this manner;

These conditions violate the eighth amendments right to be safe and reasonably unharmed by predatory prisoners who are obviously "high max" for a reason, and are placed in S.M.U. or S.H.U. (USP) for disrutive & often violent disciplanary histories.

### CLAIM FIVE

FCI Talladega, Warden Constance Reese is displaying deliberate indifference and recless disregard of plaintiffs safety and all similarly situated prisoners. Defendant Reese is repeatedly failing to act reasonably in response to prisoner danger due to double celling inside the

Special Management Unit. In that, defendant Reese keeps accepting more prisoners to SMU despite the refusal of prisoners to accept another prisoner into their cells. She then forces newly arrived prisoners into cells by utilizing a "use of force team", sack lunch, and any other measure. This has resulted in several assaults, numerous fights, one person was "held hostage" an never allowed to get out of his hand cuffs, he was then "allegedly" gagged and stabbed. In another instance inmates were able to knock down the "cell wall" in its entirety and go into the adjoining cell. Numerous prisoners have already warned warden Reese & unit manager Elston that they will stab or kill anyone placed in the cell with them, and in fact custody staff have already found over Ten (10) "homemade" knives and other weapons inside cells. Yet and still warden Reese continues to force prisoners into double cells.

## CLAIM SIX

Unit Manager Elston and Lt. Bowns knowingly and intentionally are (and have) acting with deliberate indifference, and in reckless disregard of prisoners safety in S.M.U. at (FCI Talladega). By defendant Elston & Lt. Bowns actually utilizing the "use of force team" and assembling said "Team" for the specific purpose to force prisoners into cells, where they are then assaulted and or attacked. Defendants Elston an Bowns direct the "confrontation avoidance" person to only state cuff up, or be gassed by the "Team" and that the prisoner will loose all his property and still be forced into cells in ambutory restraints, and this is what happens. Lt. Bowns, and Elston are sadistically and maliciously useing force to coerce prisoners to double cell in unsafe living conditions. Defendant Elston has stated "the more prisoners the more money & funding", "so may the best man win". Plaintiff faces this Danger in SMU at Talladega as well.

## CLAIM SEVEN

Double celling that is forced in Talladega S.M.U. is or ~~USP SHU~~ USP SHU creates an unacceptable risk of of assault due to the violent Disciplinary histories of the prisoners and there "HighMax" classifications combined with length of the cell confinement, unsupervised, is cruel and unusual punishment. Plaintiff is housed in SMU at Talladega.

### Relief

That an immediate preliminary injunction be issued enjoining & preventing Harley Lappin and any and all under his employment and subject to his directives, from forcing any prisoner to double cell in the SMU or (USP) SHU, and any "HighMax" prisoner with violence in his disciplinary history or any attempted sexual assaults in his disciplinary history, or any prisoner suffering from a mental illness including but not limited to "SHU Syndrome".

All SMU prisoners be given forensic psychological evaluations by <u>independent</u> forensic psychologist (not employed by the BoP) to determine if they suffer from <u>any</u> mental illness or any other mental defect that would cause them to be unfit to be double celled. And that all prisoners be asked <u>in writing</u> to agree or disagree to be double celled in the S.M.U. or (U.S.P.) SHU.

Compensatory, Punitive, and nominal damages —

*Demetrius Hill*
DEMETRIUS HILL
#68133-053
FCI Talladega
PMB 1000
Talladega, AL, 35160

*xxAACP Newsletter, Volume 12, Number 3, Summer 1998*

AMERICAN ASSOCIATION OF COMMUNITY PSYCHIATRISTS



### The SHU Syndrome and Community Mental Health

Mission

Current Business

Board

Join

ElectronicCommunity

Journal

Newsletter

Archive

Links

Conferences

Bulletin Board

Findings/Products

The SHU Syndome is a little known form of psychiatric decompensation, with a quickly rising incidence. It occurs in supermaximum security prisons, where a growing number of individuals suffering from serious and persistend mental disorders are housed.

"SHU" means "Security Housing Unit." Some states use that acronym for their supermaximum security prison units, where the prisoners are locked in their cells nearly 24 hours per day and are cell-fed. Other states use other initials, but "SHU" has become the generic term for supermax or "maximaxi" or "control units," such as the ones at Pelical Bay State Prison in California or Marion or Florence in the federal system. Thirty-eight states and the federal system currently operate such units.

These units are like "the hole" of the old days, except a prisoner who misbehaved was thrown in "the hole" for ten days, whereas prisoners are sent to the SHU for years. And instead of being a dark, damp dungeon: most SHU's are high tech, lights-on-all-night, doors open by remote control, video monitoring of prisoners, etc. -- i.e., the prisoners have very minimal contact with guards and other prisoners.

Psychiatrist Stuart Grassian coined the term "**SHU Syndrome.**" He examined a large number of prisoners during their stay in segregated, solitary confinement units and concluded that these units, like the sensory deprivation environments that were studied in the Sixties, tend to induce psychosis. **Even those inmates who do not become frankly psychotic report a number of psychosis-like symptoms:**

1. Massive free-floating anxiety.
2. Hyper-responsiveness to external stimuli, including a startle response.
3. Perceptual distortions and hallucinations in multiple spheres (auditory, visual, olfactory).
4. Derealization experiences.
5. **Difficulty with concentration and memory.**
6. Acute confusional states, at times associated with dissociative features, mutism, and subsequent partial amnesia for those events.
7. The emergence of primitive, ego-dystonic aggressive fantasies.
8. Ideas of reference and persecutory ideation, at times reaching delusional proportions.

9. Motor excitement, often associated with sudden, violent destructive or self-mutilatory outbursts.
10. Rapid reduction of symptoms upon termination of isolation.

And why should we, as public mental health practitioners, be concerned about this widespread development? I can think of two very frightening reasons:

1. Between a quarter and a half of the prisoners in all the SHU's I have visited or read about suffer from serious and long-term mental illnesses. They are, on average, the most severely psychotic people I have seen in my 25 years of psychiatric practice. There are two basic reasons for this: inadequately treated prisoners suffering from mental disorders break rules, get into fights (often as victims -- they are called "dings" or "bugs"), and are punished with time in "lock-up" or solitary confinement of one kind or another. After they get sentenced to enough time in solitary, they are sent to the SHU -- where "The SHU Syndrome" effect worsens their psychotic symptoms and their prognosis.

2. Increasingly, prisoners are "Maxing out of the SHU." Prisoners on fixed sentences have a release date, and their disciplinary infractions in prison do not extend that date, though they are sentenced to SHU time for the infractions. When their release date comes up, even if they are housed in a SHU at the time, they are simply set free. (Some states do some pre-release programming, but the ones I have reviewed are not adequate to the task of re-socializing someone who is psychotic and has been in solitary for a long time.)

Of course, the implications for community mental health are ominous. Not only are individuals suffering from severe and long-term mental illnesses being sent to prisons in ever larger proportions, but they are not adequately treated, and they wind up in lock-up. A subgroup of them are showing up in SHU's (another subgroup voluntarily isolate themselves in their cells so they won't get in trouble) and then, eventually, "maxing out of the SHU." This means that they come out of prison after spending months or years in a cell by themselves, decompensated and full or rage.

I don't think I am being overly dramatic, and the phenomenon is spreading rapidly. There are three things interested persons can do: (1) Join the AACP and the Committee on the Mentally Ill Behind Bars, which Fred Osher and I co-chair; (2) Check on whether there are Supermaximum Security Unit(s) in the prisons in your state, and whether mentally ill felons are confined in them; and (3) Educate yourself. Come to a large conference in Berkeley, September 25 - 27, "Critical Resistance: Beyond the Prison-Industrial Complex." It aims to build networks for progressive prison reform. Contact me regarding any of these options at Terry A Kupers, 8 Wildwood Ave., Oakland, CA 94610; E-Mail: kupers@igc.org

*Terry A. Kupers, MD*

Back to Summer 1998 Table of Contents

**Email Webmaster:**
**Ken Thompson, MD**

**Technical Support**
**Patrick Connell**

© Copyright 1998 AACP.